880 A.2d 1157 (2005)
380 N.J. Super. 55
Patricia GORDON (formerly Rozenwald), Plaintiff Respondent,
v.
Gaston ROZENWALD, Defendant Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 15, 2005.
Decided August 31, 2005.
*1160 Richard D. Shapiro, Newark, argued the cause for appellant (Hellring, Lindeman, Goldstein & Siegal, attorneys; Mr. Shapiro and Sheryl E. Koomer, on the briefs).
Robert B. Kornitzer, Short Hills, argued the cause for respondent (Budd Larner, attorneys; Mr. Kornitzer and Christina Reger, Hillsborough, on the briefs).
Before Judges SKILLMAN, GRALL and RIVA.
The opinion of the court was delivered by
GRALL, J.A.D.
Defendant Gordon Rozenwald appeals from a post-judgment order increasing and extending his alimony obligation. The appeal requires us to consider whether the statutory standard for modification of "limited duration alimony" applies retroactively to orders entered prior to the effective date of the law. N.J.S.A. 2A:34-23c. We hold that regardless of the date of the order incorporating an agreement or decree, a motion to modify term alimony must be addressed under the standards of N.J.S.A. 2A:34-23c, unless the moving party establishes that the parties agreed to terminate permanent alimony based upon a condition or expectation that has not been fulfilled or realized.
Rozenwald and Gordon married in May 1971. Because of Rozenwald's job, they lived in Belgium until 1981. Their two children were born during that period, and Gordon did not work outside the home. Rozenwald was successful. He earned $27,724 in 1971 and $214,473 in 1981. The strength of the dollar relative to Belgian currency allowed them to enjoy goods and services not otherwise affordable. The Rozenwalds rented a home and paid to have it cleaned. Their oldest child attended private school, and they traveled abroad. Gordon also visited her family in the United States, and the Rozenwalds entertained them when they came to Belgium to see her. Gordon's siblings recall the Rozenwalds' generosity and hospitality, which included a $5,000 wedding gift.
By 1981, Gordon wanted to return to the United States, and Rozenwald had an opportunity for transfer to his employer's New York City office. The family moved from Belgium to New York State. Shortly after the move, the Rozenwalds purchased a $305,000 home on over five acres of waterfront property in Westchester County. Because mortgage costs were high, they sold that home after one year and purchased a $205,000 home on a smaller lot. Although the transaction decreased their mortgage payments by approximately $1,000 per month, Rozenwald rented an apartment in New York City that year. According to Rozenwald, he rented the apartment because the parties separated. According to Gordon, he stayed in the City during the workweek and came home on weekends.
In any event, in 1985 Gordon filed a complaint for divorce in New York. On October 9, 1985, the Rozenwalds signed an agreement that resolved all issues. That agreement included permanent alimony in an initial amount of $9,750 per year which was to increase in increments to a high of *1161 $19,500 per year after forty-two months. The Rozenwalds agreed to adjust annually the $19,500 alimony in accordance with a formula based on the Consumer Price Index and increases in Rozenwald's salary. The agreement also provided for child support.
After executing the agreement and before divorce, the Rozenwalds reconciled. They sold their home in New York, moved to New Jersey and rented a home in Short Hills for $2,100 per month.
The reconciliation failed, and in November 1986 Gordon filed a second divorce complaint, this time in New Jersey. Again, the Rozenwalds resolved all issues, and the trial court incorporated their agreement in a final judgment entered in June 1989.
When the Rozenwalds negotiated their second property settlement agreement, his income was at a low point. Although he had earned $527,700 in 1987 and $479,500 in 1988, he lost his job in 1988 and accepted a new job with a salary of $100,000.
The final judgment provides for alimony in the amount of $10,000 per year for a term of fifteen years and child support in the amount of $25,000 per year, to be reduced to $20,000 per year after the emancipation of one child. When they divorced, Rozenwald was fifty years old and Gordon was forty-five.
Rozenwald explained the decision on term alimony. He was unwilling to agree to permanent alimony and viewed the fifteen-year term as "logical" because it would coincide with his retirement. Gordon said she agreed because the "deal" was the best she was going to get. Both parties were represented by counsel, and Gordon acknowledges that she understood the agreement and attested to its fairness and equity at the time of divorce.
The equitable distribution provisions of the agreement entitle Gordon to receive forty percent of the pension Rozenwald earned during the marriage when he reaches age sixty-five and elects to collect it. She also received $30,000 to purchase a residence for herself and the children, the parties' passbook savings account and all personal property in her possession. Rozenwald received the personal property in his possession and sixty-percent of his pension. Due to a combination of Rozenwald's investment losses and family spending, they had no marital assets other than those referenced above.[1]
Over a thirteen-year and three-month period following the divorce, Rozenwald gave Gordon and the children $470,474 above and beyond his obligations under the agreement. That total included contributions to Gordon's masters degree and the children's education.
Rozenwald's earnings have increased since the divorce. By 1990 he earned $256,633, more than double the $100,000 he was earning at the time of the settlement and divorce one year earlier. In every year after 1995, he earned in excess of $1,000,000. In 2001 he earned $3,869,637. Gordon's earnings have also increased. She completed her masters degree, and by the time of the hearing below she was earning $46,812 per year.
Gordon lives in a house in Millburn that she rents. According to Gordon and her siblings, her current residence compares unfavorably with the homes she enjoyed during the marriage. Rozenwald lives in an apartment in New York City that he rents. He continues to suffer investment losses.
*1162 Gordon did not file a motion to modify support until she filed this application in October 1998. A plenary hearing on the motion was held in September 2002. Following the hearing, the judge ordered Rozenwald to pay permanent alimony in the amount of $6,320 per month. Rozenwald appealed, and Gordon filed a cross-appeal, which she dismissed after the trial court improperly considered and granted her motion for reconsideration.[2]
On Gordon's motion for reconsideration, the judge increased the alimony to $10,000 monthly, made the increase retroactive to the date on which Gordon filed the original motion in 1998, and awarded Gordon counsel fees in the amount of $61,423, an amount additional to fees Rozenwald had paid on her behalf during the course of the post-judgment litigation. Rozenwald filed a second appeal from that order.
In the interest of judicial economy and to avoid additional expense and delay for the litigants, we consolidate the appeals, relax the rules and consider the order as revised on Gordon's motion for reconsideration. R. 1:1-2.
Rozenwald claims the judge erred in: converting the fifteen-year term alimony to permanent alimony; increasing the amount of alimony; transferring ownership of his life insurance policy; and assessing counsel fees.

I.
Rozenwald's argument on modification of term alimony raises an issue of first impression. He contends that the trial court erred by not applying N.J.S.A. 2A:34-23c retroactively to a judgment of divorce entered prior to enactment of the amendment. We agree and reverse.
A discussion of limited duration alimony and the statutory standard for its modification provides the context for this decision. The alimony law was amended to include limited duration alimony in order to fill a "void" identified by the Commission to Study the Law of Divorce. Sponsor's Statement to Senate Bill No. 54 (1998); Report of the Commission to Study the Law of Divorce 35 (Apr. 18, 1995). As amended, N.J.S.A. 2A:34-23c authorizes courts to award a new type of alimony previously available only to parties who included it in negotiated property settlement agreements. Id. at 34-35.[3] Limited duration alimony addresses "cases generally involv[ing] a marriage of short duration where permanent or rehabilitative *1163 alimony [is] inappropriate or inapplicable but ... economic assistance for a limited period of time [is] just." Id. at 35. It "offer[s] a benefit to spouses deserving of alimony for a limited time ... who would be unlikely to receive any alimony under [the prior] statutory scheme." Ibid.
Limited duration alimony is available to a dependent spouse who made "contributions to a relatively short-term marriage that ... demonstrated the attributes of a `marital partnership'" and has the skills and education necessary to return to the workforce. Cox v. Cox, 335 N.J.Super. 465, 483, 762 A.2d 1040 (App. Div.2000). Such a "deserving spouse" is not entitled to permanent alimony, which is awarded after a lengthy marriage for unlimited duration in recognition of prolonged economic dependence and sustained contribution to a marital enterprise. Ibid.; Report, supra, at 34. When the spouse is not in need of education or training prior to returning to the workforce after a brief marriage, rehabilitative alimony, which is awarded for a term determined on the basis of plans to enhance and improve earning capacity, is also inappropriate. Cox, supra, 335 N.J.Super. at 474-75, 762 A.2d 1040; Report, supra, at 35.
When limited duration alimony is considered in light of the void it was designed to fill, it is apparent that the "limited duration" is as critical to the purpose as its label suggests. Limited duration alimony, like permanent alimony, is based primarily on the marital enterprise. It is distinguishable from permanent alimony because the length of the marriage does not warrant permanent support and from rehabilitative alimony because the term is not based upon projections about time needed to acquire education or job skills. In order to avoid misuse of limited duration alimony to the disadvantage of supported spouses divorcing after a long-term marriage, the law prohibits award of limited duration alimony "as a substitute for permanent alimony in those cases where permanent alimony would otherwise be awarded." N.J.S.A. 2A:34-23c; see Report, supra, at 35.
The statutory standard for modification prevents misuse to the disadvantage of supporting spouses. N.J.S.A. 2A:34-23c provides:
An award of alimony for a limited duration may be modified based either upon changed circumstances, or upon the nonoccurrence of circumstances that the court found would occur at the time of the award. The court may modify the amount of such an award, but shall not modify the length of the term except in unusual circumstances.
The statute includes two standards for modification. Although the amount of the award may be modified upon a showing of either a change in circumstances or the nonoccurrence of circumstances that the court found would occur at the time of the award, the length of the term may not be modified "except in unusual circumstances." N.J.S.A. 2A:34-23c. The heightened showing that this standard requires for modification of the term preserves the distinction between "limited duration" and permanent alimony. With regular extensions based upon comparative needs and ability to pay, "limited duration" alimony would soon become a substitute for permanent alimony "where it would [not] otherwise be awarded." The result would be a form of "substitution" as unfair to supporting spouses as use of limited duration alimony as a "substitute for permanent alimony" is to supported spouses. N.J.S.A. 2A:34-23c; see Louis, Limited Duration Alimony 11 N.J. Fam. Lawyer 133, 140 (1991) (noting that without limited duration alimony a court is left with a *1164 choice between "two injustices: permanent alimony or no alimony").
Thus, the prohibition against use of limited duration alimony as a substitute for permanent alimony and the standard for modification of the length of a term of limited duration alimony serve as two boundaries that prevent misuse of this form of alimony to the disadvantage of either spouse. N.J.S.A. 2A:34-23c.
While there is good reason to avoid extension of the term set for limited duration alimony, there is no good reason to expect that fairness ordinarily will require change in the length of a term based upon future events. The length of a term of limited duration alimony is based primarily upon the historical facts of the marital enterprise, not predictions about future events as is a term of rehabilitative alimony. Compare N.J.S.A. 2A:34-23c and Cox, supra, 335 N.J.Super. at 476, 762 A.2d 1040; Report, supra, at 37 with N.J.S.A. 2A:34-23d and Shifman v. Shifman, 211 N.J.Super. 189, 194-95, 511 A.2d 687 (App. Div.1986).
The dual standard included in N.J.S.A. 2A:34-23c is consistent with and reflects prior decisional law. Under prior decisional law, support, whether set by court order or agreement, could be modified upon a showing of substantial, non-temporary changes in ability to support oneself or pay support. See Lepis v. Lepis, 83 N.J. 139, 146, 151-54, 416 A.2d 45 (1980). And, where support was premised upon the occurrence of a circumstance relevant to the need for support, modification was permitted if that circumstance did not occur. Shifman, supra, 211 N.J.Super. at 194-95, 511 A.2d 687 (an unrealized expectation about earning capacity amounts to a changed circumstance warranting modification of the duration of rehabilitative alimony).
Prior decisional law required a heightened showing, however, when a party sought to modify an agreed upon arrangement to terminate support upon a predetermined event not dependent upon the need for support. In such a case, prior decisional law recognized that modification of a voluntary, predetermined arrangement for termination of alimony would "not ordinarily be `equitable and fair.'" Lepis, supra, 83 N.J. at 153, 416 A.2d 45 (emphasis added). On that basis, the Supreme Court upheld an agreement to terminate alimony upon cohabitation without regard to the parties' respective financial circumstances. Konzelman v. Konzelman, 158 N.J. 185, 193-97, 729 A.2d 7 (1999). The judicial deference to such specific, voluntary arrangements for termination of support was based upon the interests served by such specific agreements"stability in support arrangements" and reduction of "unnecessary" litigation. Lepis, supra, 83 N.J. at 153-54, 416 A.2d 45; see Konzelman, supra, 158 N.J. at 193, 729 A.2d 7.
The premise for a term of limited duration alimony under N.J.S.A. 2A:34-23c is primarily historical not predictive and it is not based upon estimates about financial circumstances at the time of termination. Thus, the end date of a term of limited duration alimony is the equivalent of an arrangement to terminate support at a predetermined time or event, regardless of need. The statutory standard that precludes modification of the length of a term of limited duration alimony"except in unusual circumstances"is the equivalent of the standard applied to analogous arrangements for termination of support under prior decisional law"not ordinarily equitable and fair." Compare N.J.S.A. 2A:34-23c with Lepis, supra, 83 N.J. at 153-54, 416 A.2d 45. Because the statutory standard for modification of limited duration *1165 alimony is the equivalent of the standard utilized in prior judicial decisions addressing analogous arrangements, trial courts applying the "unusual circumstances" standard in N.J.S.A. 2A:34-23c should consider decisions addressing modification of such specific provisions under the "not ordinarily fair and equitable" standard of prior decisional law. See, e.g., ibid.; Morris v. Morris, 263 N.J.Super. 237, 241-42, 622 A.2d 909 (App.Div.1993) (enforcing provision foreclosing modification based on changed circumstances despite economic hardship, and noting that a different result might be required in a case involving disability); cf. Peskin v. Peskin, 271 N.J.Super. 261, 275-76, 638 A.2d 849 (App.Div.1994) (settlement agreements must be voluntary not the result of coercion, deception, fraud or undue pressure).
Whether N.J.S.A. 2A:34-23c is applied prospectively or retroactively, courts must consider whether application of the "unusual circumstances" standard conflicts with the statute's prohibition against use of limited duration alimony as a substitute for permanent support. See Cox, supra, 335 N.J.Super. at 476-83, 762 A.2d 1040. Because spousal agreements allow the parties to address their particular circumstances, the arrangements vary. Lepis, supra, 83 N.J. at 157-59, 416 A.2d 45. Agreements to provide permanent support through a combination of term alimony and distribution of marital assets or to terminate permanent alimony upon the supported spouse's receipt of anticipated funds, such as an inheritance, have the potential to pose the conflict. See id. at 154, 416 A.2d 45.
Under agreements that envision permanent support through a combination of term alimony and acquisition of assets intended to replace support, a failure of the second condition has the effect of cutting off permanent support that the parties agreed was appropriate. Thus, protecting the length of the term under those circumstances has the same effect as "substituting" "limited duration alimony" for permanent support, contrary to the express statutory prohibition in N.J.S.A. 2A:34-23c.
In contrast, N.J.S.A. 2A:34-23c should be applied on motion to change a termination date selected for reasons unrelated to continued supportfor example, on the basis of a reasonable retirement date or as a reasonable compromise of a dispute about permanency. Arrangements of that sort are voluntary agreements to terminate support on a set date. N.J.S.A. 2A:34-23c; see Deegan v. Deegan, 254 N.J.Super. 350, 355-57, 603 A.2d 542 (App. Div.1992); N.J.S.A. 2A:34-23b-c. Preservation of the term in such a case does not terminate permanent support that the parties deemed appropriate.
In addressing agreements, courts may and should presume that preservation of an arrangement to terminate alimony will not conflict with the prohibition against substitution of limited duration for permanent alimony and apply the "unusual circumstances" standard. See N.J.S.A. 2A:34-23c; Konzelman, supra, 158 N.J. at 195-97, 729 A.2d 7. That presumption is premised upon the principle that "the parties to a dispute are in the best position to determine ... [the] least disadvantageous" resolution and fashion an arrangement that meets their particular needs. Peskin, supra, 271 N.J.Super. at 275, 638 A.2d 849 (quoting Dep't of Pub. Advocate v. N.J. Bd. of Pub. Utils., 206 N.J.Super. 523, 528, 503 A.2d 331 (App.Div.1985)); see Konzelman, supra, 158 N.J. at 195-97, 729 A.2d 7; Lepis, supra, 83 N.J. at 153-54, 416 A.2d 45.
In order to prevent preservation despite the non-performance or nonoccurence of a condition intended to provide *1166 permanent support, which would undermine the statutory scheme, we hold that a party may overcome the presumption and avoid application of N.J.S.A. 2A:34-23c by demonstrating, as part of a prima facie case, that the term is a substitute for permanent alimony premised upon a promise or expectation of alternative funds for support that has not been fulfilled or realized. See Lepis, supra, 83 N.J. at 157-59, 416 A.2d 45.

II.
The history, purpose and operation of limited duration alimony law lead us to conclude that courts should apply N.J.S.A. 2A:34-23c regardless of the date of the agreement or order at issue on a motion to modify term alimony.
Absent "manifest injustice" based upon reliance on prior law, the choice between retroactive and prospective application of a new law is a question of the Legislature's intention. See Bradley v. Sch. Bd. of City of Richmond, 416 U.S. 696, 716-17, 94 S.Ct. 2006, 2018-19, 40 L.Ed.2d 476, 491 (1974); Gibbons v. Gibbons, 86 N.J. 515, 521, 524-25, 432 A.2d 80 (1981). The courts of this state generally apply a rule that assumes the Legislature intends prospective application of new law, but that rule is not applied where a contrary intention is apparent. Phillips v. Curiale, 128 N.J. 608, 615, 608 A.2d 895 (1992); Rothman v. Rothman, 65 N.J. 219, 224, 320 A.2d 496 (1974).
The necessary "expression of [contrary] legislative intent may be either express, that is[,] stated in the language of the statute or in the pertinent legislative history, or implied, [where] retroactive application may be necessary to make the statute workable or to give it the most sensible interpretation." Gibbons, supra, 86 N.J. at 522, 432 A.2d 80 (citations omitted). The inference of intention to apply an amendment retroactively is favored where the change is ameliorative, curative or simply reflective of decisional law. Id. at 523-24, 432 A.2d 80; see Innes v. Innes, 117 N.J. 496, 509-10, 526, 569 A.2d 770 (1990).
On three occasions, the Court has inferred legislative intent to apply amendments to the divorce law retroactively. Those decisions are instructive here.
In Rothman, the Supreme Court held that retroactive application of the equitable distribution law was appropriate because it was both consistent with the most sensible interpretation of the law and necessary to make the law workable. Rothman, supra, 65 N.J. at 223-24, 320 A.2d 496. Due to the difficulties posed by prospective application and the lengthy delay of reform that would follow, the Court was "unable to believe" the "Legislature intended its grant of power to undertake an equitable distribution of marital assets to apply solely to property acquired on or after the effective date." Id. at 223, 320 A.2d 496.
In Innes, the Supreme Court directed courts to apply, on all pending matters involving establishment or modification of alimony, an amendment to the divorce law that precludes consideration of income derived from a pension distributed at the time of divorce. Innes, supra, 117 N.J. at 504-06, 569 A.2d 770. Again, the Court considered the complexities and delay inherent in prospective application and concluded: "To make this amendment workable and to give it its most sensible interpretation, it must be applied to modification of alimony orders that were entered prior to the effective date of the amendment." Id. at 510, 569 A.2d 770. Because the amendment reflected judicial decisions, concern for upsetting reasonable expectations was diminished. Id. at 506, 509, 569 A.2d 770.
*1167 In Gibbons, the Court gave retroactive effect to an amendment prohibiting equitable distribution of gifts and inheritances received by one spouse during the marriage. Gibbons, supra, 86 N.J. at 524-25, 432 A.2d 80. The Court again considered practical problems posed by an inquiry into date of acquisition. Id. at 523, 432 A.2d 80. The Court also considered legislative history suggesting that the Legislature intended immediate reform. Id. at 524, 432 A.2d 80. And, the Court characterized the amendment as "curative insofar as it reflects the Legislature's attempt to improve a statutory scheme already in existence." Ibid.
Retroactive application of N.J.S.A. 2A:34-23c is consistent with, if not compelled by, Rothman, Gibbons and Innes.
There is no reason for concern that retroactive application will work a "manifest injustice." The reasonable expectations of one who relied upon prior decisional law cannot be upset if N.J.S.A. 2A:34-23c is applied without regard to the date of the order establishing alimony. Gibbons, supra, 86 N.J. at 524-25, 432 A.2d 80. As our discussion in part I demonstrates, N.J.S.A. 2A:34-23c incorporates standards for modification of alimony that reflect prior decisional law. See Innes, supra, 117 N.J. at 506, 509, 569 A.2d 770.
The legislative history supports retroactive application of N.J.S.A. 2A:34-23c. The debate and study leading to enactment of limited duration alimony provides compelling evidence of legislative intent to apply the law to all orders incorporating limited duration alimony, regardless of date. As discussed in part I, that history shows that limited duration alimony was designed to give courts the authority to award a type of alimony that divorcing spouses were incorporating in negotiated agreements prior to the statutory amendments. It would be unreasonable to believe that the Legislature intended to withhold the protection against erosion of a term of "limited duration," which N.J.S.A. 2A:34-23c provides, from the parties whose agreements provided the model for the law. Implementation of this significant component of the reform would be delayed by prospective application. See Rothman, supra, 65 N.J. at 223-24, 320 A.2d 496.
The Legislature's intention to prefer immediate application may also be inferred from its failure to address the issue in the context of this amendment to the divorce law. The Legislature is presumed to be familiar with judicial interpretations of its enactments and to act with an understanding of the precedents. See Chase Manhattan Bank v. Josephson, 135 N.J. 209, 227, 638 A.2d 1301 (1994). Rothman, Gibbons and Innes were decided long before N.J.S.A. 2A:34-23c was amended, and surely the Legislature would have spoken if it intended a different result here. Instead, the Legislature simply provided for the amendments to take immediate effect. L. 1999, c. 199, § 3.
Finally, the amendments to N.J.S.A. 2A:34-23c are curative in the same sense that the Supreme Court found the amendments to the divorce law at issue in Gibbons to be curative. N.J.S.A. 2A:34-23c enhances the fairness of the alimony law by providing support for deserving spouses who could not receive it under prior law, which authorized only permanent and rehabilitative alimony. The Legislature took care, however, to prevent misuse of limited duration alimony to the disadvantage of either spouse. By prohibiting use of limited duration alimony as a substitute for permanent alimony, the Legislature prohibited misuse to the disadvantage of a supported spouse deserving of permanent alimony. N.J.S.A. 2A:34-23c. By prohibiting modification of the duration of the *1168 term except in "unusual circumstances," the Legislature prohibited misuse to the disadvantage of the supporting spouse. Thus, the modification standard is an essential component of the curative amendments and should be applied in all pending cases. See Louis, supra.
Because retroactive application is consistent with the most reasonable interpretation of the Legislature's intention in supplementing the alimony law and because the curative amendment reflects decisional law, we hold that courts should apply N.J.S.A. 2A:34-23c to all motions to modify term alimony, unless the moving party establishes that the term is a substitute for permanent alimony premised upon a promise or an expectation that has not been fulfilled or realized. See Lepis, supra, 83 N.J. at 157-59, 416 A.2d 45.

III.
We conclude that Gordon failed to establish that the parties agreed to terminate permanent alimony based upon a condition or expectation that has not been fulfilled or realized and failed to establish "unusual circumstances" warranting conversion of this fifteen-year term alimony to permanent alimony.
Gordon did not introduce any evidence that rebuts the presumption that this agreement to alimony for a term of fifteen years is a fair and equitable predetermination of a date upon which support should end. See Konzelman, supra, 158 N.J. at 195-97, 729 A.2d 7. There is no evidence that the agreement was involuntary, brought about through fraud, coercion or duress, or unfair on its face. Id. at 203, 729 A.2d 7; Peskin, supra, 271 N.J.Super. at 275-76, 638 A.2d 849.
At the time of the divorce Gordon testified that the agreement was fair and equitable. See Puder v. Buechel, 183 N.J. 428, 437, 874 A.2d 534 (2005). During the hearing below, she testified that she accepted the fifteen-year term as the "best deal" she would get. The trial judge who accepted the agreement made it clear that the parties had the option of going to trial.
There is nothing inherently unfair about the agreed upon duration of this term. Konzelman, supra, 158 N.J. at 194, 729 A.2d 7. The fifteen-year term was selected at the end of a fifteen-year marriage. The termination date selected coincided with the year of Rozenwald's sixty-fifth birthday, which is not an unreasonable age for retirement.[4]See Horton v. Horton, 219 N.J.Super. 76, 79, 529 A.2d 1034 (Ch. Div.1987). Thus, the term is consistent with a voluntary predetermination of a reasonable end point for a period of permanent support. Konzelman, supra, 158 N.J. at 195-97, 729 A.2d 7.
The fact that Rozenwald has not retired is irrelevant under this agreement. See N.J.S.A. 2A:34-23c. This is not a case in which the parties agreed to terminate permanent alimony "upon retirement at or after age sixty-five." If they had so agreed, alimony would not terminate until actual retirement at the permissible age. And, there is no showing that a promise or condition relevant to the duration of this *1169 alimony was not fulfilled or realized. Gordon does not deny that she received $30,000 toward the purchase of a new residence when marital assets were divided or even allege an unfulfilled promise or condition related to the term of alimony.
Under the circumstances of this case, extension of the term until Rozenwald's retirement or beyond would amount to a revision of a specific term of their agreement, which is "ordinarily" not fair and requires "unusual circumstances." Compare Lepis, supra, 83 N.J. at 148-49, 416 A.2d 45 with N.J.S.A. 2A:34-23c.
An increase in the supporting spouse's income is not relevant to the duration of alimony. The amount of the alimony, and not the duration of the term, was limited on the basis of Rozenwald's income at the time of the divorce. Over the years Rozenwald provided support above and beyond his obligations under the agreement, and Gordon did not opt to seek increased support until she filed the motion that brings the parties before us.
There is no showing of "unusual circumstances" or circumstances warranting an exception to the application of that standard. For that reason, the order converting the fifteen-year term alimony to permanent alimony is reversed.

IV.
The amount of the alimony award has continuing significance despite our decision on the duration of the term, because the trial court increased alimony retroactive to the date on which Gordon filed the original motion for modification in 1998. For that reason, we address Rozenwald's objections to the amount of alimony.
Our review of the amount of an alimony award is limited. A trial court's rulings in such matters are discretionary and not overturned unless the court abused its discretion, failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence. Tash v. Tash, 353 N.J.Super. 94, 99, 801 A.2d 436 (2002); Rolnick v. Rolnick, 262 N.J.Super. 343, 359-60, 621 A.2d 37 (1993). In this case, the trial court's findings and conclusions of law are inadequate to permit review. Minimally adequate fact finding requires a discussion that demonstrates that the court has heard and addressed the relevant facts and claims under the controlling legal standards. See Bailey v. Bd. of Review, 339 N.J.Super. 29, 33, 770 A.2d 1216 (App.Div.2001) (administrative agency).
The findings in this case do not meet the standards. Several of the findings that were made are inconsistent with the evidence, and the decision is inconsistent with controlling legal principles. The cumulative errors require remand, and we simply note the errors that require correction.
The trial court's decision to increase the alimony from $6,320 to $10,000 on Gordon's motion for reconsideration is explained by only a vague reference to tax consequences, which is inadequate.
The judge understated Gordon's income by $6,812 per year and did not consider her $46,812 income in calculating her need for support. See Lepis, supra, 83 N.J. at 155, 416 A.2d 45.
Despite significant evidence included in the court appointed expert's report on the marital standard of living, the judge described the standard of living in general and vague terms: "affluent and prosperous"; not "modest"; "finest neighborhoods"; "exclusive stores"; "largely high class"; "wanton abandon as to spending"; "very well off"; not "middle class or average in any way"; and "of the highest order." This subjective approach is inadequate. *1170 Weishaus v. Weishaus, 180 N.J. 131, 145, 849 A.2d 171 (2004), requires "the court [to] establish[] the amount the parties needed during the marriage to maintain their lifestyle." The court did not address the detailed expert report. If the court had reason to reject the report, those reasons were not given.
The judge also failed to address or consider the standard of support the parties incorporated in their first settlement agreement. Rozenwald concedes that the parties' first settlement agreement is evidential. Indeed, on this appeal he argues that it demonstrates Gordon's understanding of the difference between permanent and term alimony. The agreement is also evidential of the support the parties deemed appropriate at a time when Rozenwald's earnings were not depressed.[5] This relevant evidence was disregarded without discussion or explanation.
Although the judge prepared a detailed list of the expenses he deemed reasonable in light of the marital standard of living, he did not explain how he derived the numbers. The total budget the court found to be consistent with the marital standard was $3,720 per month. In some respects that budget was inconsistent with the court's findings. For example, the court concluded that Gordon's present housing is not reasonably comparable to the marital standard but included her present shelter expenses in the reasonable budget.
After the judge identified a reasonable budget of $3,720, he did not make findings in support of his seemingly arbitrary additions to that amount. The judge added: $1,000 per month "for outstanding obligations which are ongoing and recurring"; and "an additional sum of $600 per month in order to [permit Gordon to] dress the way she did during the marriage"; and $1,000, "for pocket money and any other incidental costs that [Gordon] needs to maintain herself so that she will have sufficient money as she did during the marriage." Findings of this sort, without reference to the supporting evidence, are insufficient to permit review by this court and a disservice to the litigants, who are left to speculate about the basis for the discretionary decision. Klajman v. Fair Lawn Estates, 292 N.J.Super. 54, 61, 678 A.2d 289 (App.Div.) (quoting Curtis v. Finneran, 83 N.J. 563, 569-70, 417 A.2d 15 (1980)), certif. denied, 146 N.J. 569, 683 A.2d 1164 (1996); Rosenberg v. Bunce, 214 N.J.Super. 300, 304, 518 A.2d 1134 (App.Div.1986).
We reverse and remand the order setting alimony at $10,000 per month.

V.
We also vacate the judge's order directing Rozenwald to transfer ownership of the policy of insurance on his life. That order directs the transfer of property and amounts to a distribution of property fifteen years after the final judgment. That is a highly extraordinary measure not warranted by any evidence adduced in this case. Rosen v. Rosen, 225 N.J.Super. 33, 541 A.2d 716 (App.Div.), certif. denied, 111 N.J. 649, 546 A.2d 558 (1988). Moreover, in light of our decision reversing the trial court's order on permanent alimony, there is no justification for continuing an order requiring life insurance to secure alimony, *1171 except to the extent necessary to secure payment of any arrears.

VI.
The counsel fee award is also unsupported by adequate findings on issues critical to application of the law. The judge's decision does not address the following: Rozenwald's fees and costs in defending against Gordon's application; fees Rozenwald paid on behalf of Gordon during the course of the proceeding; or Gordon's ability to contribute to her own fees in light of the retroactive increase in support. See R. 5:3-5(c); Chestone v. Chestone, 322 N.J.Super. 250, 730 A.2d 890 (App.Div.1999).
The orders are reversed and the matter is remanded. We do not retain jurisdiction.
NOTES
[1] This was the opinion of the court appointed expert whose report was submitted as a joint exhibit at the hearing on this application to modify support.
[2] Rozenwald's appeal deprived the trial court of jurisdiction to reconsider its order. R. 2:9-1(a). As we have indicated in the past, a party who seeks reconsideration by the trial court must apply to this court for an order remanding the matter. Kiernan v. Kiernan, 355 N.J.Super. 89, 92, 809 A.2d 199 (App.Div. 2002).
[3] N.J.S.A. 2A:34-23c provides:

c. In any case in which there is a request for an award of permanent alimony, the court shall consider and make specific findings on the evidence about the above factors. If the court determines that an award of permanent alimony is not warranted, the court shall make specific findings on the evidence setting out the reasons therefore. The court shall then consider whether alimony is appropriate for any or all of the following: (1) limited duration; (2) rehabilitative; (3) reimbursement. In so doing, the court shall consider and make specific findings on the evidence about factors set forth above. The court shall not award limited duration alimony as a substitute for permanent alimony in those cases where permanent alimony would otherwise be awarded.
. . . .
In determining the length of the term, the court shall consider the length of time it would reasonably take for the recipient to improve his or her earning capacity to a level where limited duration alimony is no longer appropriate.
[4] There is no bright line that divides the duration of a marriage that warrants an award of permanent alimony from the duration of a marriage that is too brief for an award of permanent alimony. Duration is one factor relevant to the determination whether permanent alimony is appropriate. N.J.S.A. 2A:34-23b-c. A court should not reassess a negotiated assessment of that determination years after a divorce absent a prima facie showing of unfairness relevant to duration. See R. 4:50-1; R. 4:50-2. Such litigation would clearly be contrary to the Legislature's intention to promote fairness and stability in support arrangements of this sort.
[5] We recognize that the child support under the New York agreement was in an amount less than the child support under this agreement, but child support is not at issue here. And, if the child support included in this agreement was meant to provide non-taxable spousal support, that would not further Rozenwald's position on the adequacy of the alimony included in this agreement.