**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3937-17T3

M.S.,

    Plaintiff-Appellant,

v.

M.A.S.,

    Defendant-Respondent.

_____

Argued March 26, 2019 – Decided May 7, 2019

Before Judges Yannotti and Natali.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0670-15.

Robert M. Zaleski argued the cause for appellant (Law Offices of Paone, Zaleski & Murray, attorneys; Andrew J. Economos, of counsel and on the briefs).

Bonnie C. Frost argued the cause for respondent (Einhorn, Harris, Ascher, Barbarito & Frost, PC, attorneys; Matheu D. Nunn and William J. Berman, on the brief).

PER CURIAM

Plaintiff M.S.[1] appeals from portions of a March 23, 2018 Family Part order denying his motion for reconsideration of the court's January 19, 2018 order. After conducting a thorough review of the record in light of the applicable legal principles, we affirm in part, reverse in part, and remand for further proceedings.

I.

M.S. and M.A.S. were married on August 18, 2000. They have two daughters, a seventeen-year-old and a fourteen-year-old, both of whom reside with defendant on a full-time basis. On September 1, 2011, the parties separated and plaintiff moved to Boston.

Plaintiff filed a complaint for divorce on June 26, 2013. In his 2013 case information statement (CIS), plaintiff represented that the expenses necessary to support the marital lifestyle totaled $32,091 per month. Defendant's 2013 CIS, however, claimed that the marital lifestyle expenses totaled only $17,526 per month. Both CISs stated the parties' joint gross income was approximately $583,000 and their joint net income was $386,480 in 2012, the year following their separation.

---

[1] We use initials to protect the confidentiality of the participants in these proceedings

A-3937-17T3

On January 6, 2014, the parties executed a Consent Final Judgment of Custody and Parenting Time and plaintiff dismissed the divorce complaint. Plaintiff reinstated the divorce proceedings the following year, and on December 8, 2015, the court entered a Final Judgment of Divorce (JOD), which dissolved the parties' fifteen year marriage and incorporated their August 2015 Divorce Settlement Agreement (DSA).

At the time the DSA was executed, plaintiff was employed as the Chief Medical Officer of a pharmaceutical company with a base annual salary of $405,000. In addition, he was eligible to earn additional incentives as compensation, including "cash bonuses and stock options." When she signed the DSA, defendant was "employed as a part time self-employed consultant to the pharmaceutical industry." The parties acknowledged in the DSA that for purposes of establishing plaintiff's alimony obligation, defendant's current income was uncertain. The parties agreed, however, that "in no event shall gross earned income of less than $110,000.00 per year be imputed to [defendant]."

Pursuant to paragraph five of the DSA, plaintiff agreed to pay defendant limited duration alimony for a period of ten years. Specifically, plaintiff was required to pay defendant $100,000 per year in "base" limited duration alimony, plus 25% of any "gross cash bonus" he earned as "additional" limited duration

3

alimony for the first eight years.[2]  For the following two years, his base alimony would decrease to $75,000 per year, and he would no longer have to pay the "additional" alimony.

Two provisions of the DSA, paragraphs eight and twelve, are particularly relevant to the issues raised by plaintiff related to his continued alimony obligation.  Paragraph eight provides:

> The parties have been advised of the [Lepis] decision ([Lepis v. Lepis, 83 N.J. 139 (1980)]), and other appropriate statutes (including [N.J.S.A.] 2A:34-23), rules, and case law governing alimony.  The parties understand that the amount of alimony provided hereunder may be modified or terminated accordingly. The parties further understand that the duration or term of [plaintiff's] limited duration alimony obligation may only be modified upon a showing of unusual circumstances as set forth in [N.J.S.A.] 2A:34-23.

Further, in paragraph twelve, both parties agreed that:

> The[y] . . . have been made aware of the case of [Crews v. Crews, 164 N.J. 11 (2000)] and the related case law. The parties agree that based upon the terms of this Agreement, they each have the ability to maintain the standard of living established during the marriage.

---

[2]  Paragraph five further provides that "[t]he parties specifically acknowledge that [plaintiff's] additional alimony obligation applies only to any gross cash bonus paid to [plaintiff] and does not apply to any other form of bonus or incentive compensation including but not limited to stock or stock options which may be earned by [plaintiff] or paid to [plaintiff]."

In addition, the parties agreed that the limited duration alimony award would terminate if either party died, or if defendant remarried or was determined to be cohabiting. The DSA also required plaintiff to maintain life insurance on behalf of defendant and the children. As to defendant, plaintiff agreed to maintain a $1,000,000 policy "as long as [plaintiff] maintains an alimony obligation" under the DSA. Commencing on July 1, 2016, and each succeeding year, the DSA entitled plaintiff to reduce the policy's death benefit by $80,000.

In September 2015, one month after the parties signed the DSA, plaintiff moved to Germany and he lost his job approximately five months later in February 2016. Plaintiff was rehired by a different pharmaceutical company shortly thereafter and currently earns a base salary of $322,000. Defendant claimed that despite his reduced base salary, plaintiff still receives substantially the same annual income as he did in his previous job but structured his current compensation package to lower his base salary.

Defendant attested that she was unemployed from January 2016 through March 2016, but that her income increased "during 2016 as a result of having to work more hours to meet the financial demands of supporting [herself] and [the parties'] two daughters." Defendant's current base salary is $190,000, and, like plaintiff, she has an opportunity to earn an annual bonus.

5                                                                    A-3937-17T3

According to defendant, in September 2016, plaintiff refused to contribute to the children's extra-curricular and other miscellaneous expenses. She certified that plaintiff's "reduced base salary . . . and his potential for a higher stock reward with [defendant] having no entitlement," his "inability to secure [United States] medical insurance for the children," and his "decision to stop contributing to [the] children's extra-curricular costs" required her "to secure full-time employment as of January 2017."

Defendant certified that working fulltime "was not the marital lifestyle to which [they] had become accustomed; nor was this what was agreed upon." Defendant maintained the parties enjoyed a "very comfortable" and "somewhat luxurious" marital lifestyle that enabled them to "take extensive and luxurious vacations regularly consisting of at least [five] weeks throughout the year," including trips to Europe and the Caribbean. Further, defendant certified that during the marriage she "was able to shop and spend freely," that she "bought items for the children and [their] home without much thought on cost," and that the children "were able to attend expensive private schools and to enjoy expensive extra-curricular activities."

In February 2017, plaintiff unilaterally stopped paying alimony because defendant had become a full-time permanent employee one month earlier and

A-3937-17T3

was earning $190,000 per year.  On November 14, 2017, plaintiff filed a motion seeking, among other relief, to: 1) terminate his alimony obligation retroactive to April 2016; 2) amend the DSA's additional alimony provision to provide that any percentage of the "gross cash bonus" defendant must pay to plaintiff "be offset, dollar for dollar," by any "gross cash bonus" that plaintiff receives from her new job; 3) terminate his obligation under the DSA to maintain life insurance for defendant's benefit; and 4) suspend plaintiff's alimony obligation and permit him to conduct discovery if the court determines a plenary hearing is necessary.

Plaintiff filed a certification and an updated CIS in support of his motion, in which he certified that "upon information and belief" defendant earns a bonus in an undisclosed amount and has rental income of $26,000.  The updated CIS did not list the parties' marital lifestyle expenses.  His certification stated that although both his and defendant's "financial circumstances have changed dramatically since the execution of our DSA … it is solely the change to defendant's financial circumstances that . . . warrants the termination of [his] alimony obligation . . . ."  Defendant filed a cross-motion to enforce litigant's rights and an updated CIS.  Like plaintiff's updated CIS, defendant's CIS did not list the parties' marital lifestyle expenses.

A-3937-17T3

On January 19, 2018, following oral arguments, the court entered an order accompanied by a written statement of reasons in which it concluded defendant's salary increase since the time the DSA was executed qualified as a substantial change in circumstances. Accordingly, the court granted plaintiff's motion in part by modifying, but not terminating, his annual alimony obligation from $100,000 to $73,500 per year retroactive to November 14, 2017, the date plaintiff filed his motion. The court also granted defendant's cross-motion in part by requiring plaintiff to pay alimony arrears in the amount of $91,216, payable by way of wage garnishment.

Plaintiff filed a motion for reconsideration on February 9, 2018. Plaintiff maintained termination of alimony was appropriate, and claimed the court committed error by using an arbitrary formula, proposed by defendant, to establish the modified alimony award. Defendant filed a cross-motion seeking wage garnishment and other relief, and a certification in which she denied earning any rental income.

The court heard oral arguments on March 23, 2018, and issued an order and statement of reasons that day denying plaintiff's motion for reconsideration and granting in part defendant's cross-motion. The court expressly denied using a mathematical formula to calculate the modified award. Instead, the court

explained it conducted an analysis of the ten factors detailed in N.J.S.A. 2A:34-23(k), and found factors four, seven, eight, and ten "directly implicated by the parties' submissions." The court stated that it found factors four and seven were implicated because defendant's income increased from $110,000 to $190,000; factor eight was applicable as defendant's "earnings increased because of new, full-time employment"; and factor ten was relevant because "plaintiff has engaged in unilaterally stopping alimony payments of any sort before a [c]ourt [o]rder instructed him to do so, creating a situation in which the defendant was placed in a financial quagmire."

On appeal, plaintiff argues that the trial court erred by: 1) misinterpreting the DSA by modifying, rather than terminating, his alimony obligations; 2) requiring him to maintain a life insurance policy for defendant's benefit and pay alimony arrears via wage garnishment; 3) refusing to amend paragraph five of the DSA to provide that plaintiff may offset his "additional" alimony obligation dollar-for-dollar against any cash bonus defendant receives; 4) failing to explain its factual findings contrary to Rule 1:7-4 with respect to the retroactive date and amount of his modified obligation; and 5) failing to conduct a plenary hearing on several disputed issues. We reject all of plaintiff's points with the exception of his arguments that the court failed to conduct a plenary hearing

9

with respect to the amount of his modified alimony obligation or adequately explain its factual findings and legal conclusions supporting the modified amount. Accordingly, we reverse the March 23, 2018 order on those limited issues and remand for a plenary hearing and additional factual findings consistent with our opinion.

## II.

We initially note that plaintiff appeals from only the court's March 23, 2018 order denying his reconsideration motion. Indeed, his notice of appeal states he appeals from paragraphs one through fourteen, and sixteen, of the March 23, 2018 order, and makes no reference to the court's initial January 19, 2018 order.

"[I]t is clear that it is only the judgments or orders or parts thereof designated in the notice of appeal which are subject to the appeal process and review." Fusco v. Bd. of Educ. of Newark, 349 N.J. Super. 455, 461-62 (App. Div. 2001). However, "[w]e are mindful of the fact that in some cases a motion for reconsideration may implicate the substantive issues in the case," and "an appeal solely from . . . the denial of reconsideration may be sufficient for an appellate review of the merits of the case." Id. at 461. Here, to the extent plaintiff's motion for reconsideration was based on the argument that the court's

A-3937-17T3

rulings were based upon a palpably incorrect or irrational basis, see D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990), the substantive issues presented to the court on the parties' original motion and plaintiff's motion for reconsideration are sufficiently the same to warrant our review of the merits of both. See Fusco, 349 N.J. Super. at 462.

In reviewing a Family Part judge's motion order, we defer to "factual findings 'supported by adequate, substantial, credible evidence' in the record." Landers v. Landers, 444 N.J. Super. 315, 319 (App. Div. 2016) (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)). "However, when reviewing legal conclusions, our obligation is different; '[t]o the extent that the trial court's decision constitutes a legal determination, we review it de novo.'" Landers, 444 N.J. Super. at 319 (alteration in original) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)). A court's reconsideration opinion will not be disturbed on appeal "absent a clear abuse of discretion." In re Estate of Brown, 448 N.J. Super. 252, 269 (App. Div. 2017) (citing Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 383 (App. Div. 2015)). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an

impermissible basis.'"  Ibid. (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

III.

In plaintiff's first point, he argues the court abused its discretion in deciding not to terminate his alimony obligations.  We disagree.

Initially we note that when parties originally agree to the amount and conditions of alimony, that agreement should be enforced like any other settlement agreement.  Quinn v. Quinn, 225 N.J. 34, 44-46 (2016).  "A settlement agreement is governed by basic contract principles."  Id. at 45 (citing J.B. v. W.B., 215 N.J. 305, 326 (2013)).  Accordingly, a court's role is to "discern and implement the intentions of the parties" as expressed in the agreement.  Ibid. (citing Pacifico v. Pacifico, 190 N.J. 258, 266 (2007)).

In the DSA, the parties agreed to a limited duration alimony award that would terminate if either party died, defendant remarried or was determined to be cohabitating.  In addition, the parties expressly stated in paragraph eight that the "duration or term of [plaintiff's] limited duration alimony obligation may only be modified upon a showing of unusual circumstances as set forth in N.J.S.A. 2A:34-23(c)."  We have interpreted the phrase "unusual circumstances" in this context as requiring a "heightened" showing.  See Gonzalez-Posse v.

Ricciardulli, 410 N.J. Super. 340, 356 (App. Div. 2009); Gordon v. Rozenwald, 380 N.J. Super. 55, 67-68 (App. Div. 2005) (explaining that requiring a "heightened showing" serves to "prevent misuse" of limited duration alimony "to the disadvantage of either spouse" as "the end date of a term of limited duration alimony is the equivalent of an arrangement to terminate support at a predetermined time or event, regardless of need").

In support of his request to terminate his limited duration alimony obligation, plaintiff relies on paragraph twelve of the DSA. He argues that the only "common sense" interpretation of the DSA is that the parties intended and agreed by paragraph twelve that a gross income of $210,000 (defendant's imputed income of $110,000 supplemented by plaintiff's base $100,000 limited duration alimony obligation) would enable defendant to maintain the marital lifestyle. According to plaintiff, because defendant currently has a base salary of "at least $190,000 gross per year, [and] also was scheduled to receive an additional bonus in March (2018), and does not refute the fact that she receives $26,000 per year in rental income," alimony should have been terminated.[3]

---

[3] Defendant, in fact, did "refute" that she collected $26,000 in rental income. Indeed, in her certification filed in connection with the reconsideration proceedings, defendant certified that she "do[es] not receive [any] rental income."

Plaintiff fails to cite to, or discuss, paragraph eight of the DSA. Under that provision, the only basis to terminate the limited alimony award would be if plaintiff established "unusual circumstances" warranting such relief. We conclude that the trial court did not abuse its discretion in refusing to terminate the agreed upon limited duration alimony as such a remedy would be, as the court stated, a "drastic measure" unwarranted by the motion record or the DSA. Simply put, defendant's increase in income, from that imputed to her in the DSA, was not an unusual circumstance warranting termination of her limited duration alimony award.

IV.

Next, plaintiff maintains that the court abused its discretion when it failed to reconsider its decision requiring plaintiff to maintain life insurance on defendant's behalf, compelling plaintiff to pay alimony arrears and ordering a wage garnishment. Again, we disagree.

In accordance with the clear terms of the DSA, plaintiff's obligation to maintain life insurance for the benefit of defendant terminates when plaintiff's alimony obligation ends. Because the court correctly denied plaintiff's request to terminate that obligation, it did not abuse its discretion in denying his attendant requirement to maintain life insurance and pay any outstanding

14

arrears. To the extent the court deems it appropriate to modify the alimony award after the remanded proceedings, see infra pp. 21-23, it should retroactively modify any accrued arrears. Finally, in light of plaintiff's unilateral decision in February 2017 to cease paying alimony, the court's decision requiring plaintiff to pay all alimony arrears through wage garnishment was an appropriate exercise of its discretion.

V.

Plaintiff also claims the court erred in denying his request to amend the DSA. Specifically, plaintiff requested the court modify paragraph five so "that any 'gross cash bonus' that [he] must provide to [defendant] be offset, dollar for dollar, by any gross cash bonus that [defendant] may receive through her" new job. Plaintiff further argues that the court failed to explain the basis for its decision as required by Rule 1:7-4. We are not persuaded by plaintiff's arguments.

In Quinn, the Court noted that post-matrimonial settlement agreements are contractual in nature and "[i]t is not the function of the court to rewrite or revise an agreement when the intent of the parties is clear." Quinn, 225 N.J. at 45 (citing J.B. v. W.B., 215 N.J. 305, 326 (2013)). "Stated differently, the parties cannot expect a court to present to them a contract better than or different from

the agreement they struck between themselves." Ibid. (citing Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960)).

Here, the court properly rejected plaintiff's request and stated in its January 19, 2018 statement of reasons:

> The language of the agreement is clear and unambiguous, and continuing to enforce this provision, especially in light of the modification above would not result in an absurdity. As a result, as held under [Quinn v. Quinn, 225 N.J. 34 (2016)], the [c]ourt cannot rewrite an unambiguous agreement that was entered into freely by the parties.

Based on the clear and unambiguous language in paragraph five, we conclude the court did not abuse its discretion when it denied plaintiff's request to rewrite the DSA. There is no textual support in the DSA for the proposition that the parties intended for defendant to forfeit her right to partake in plaintiff's bonuses if she earned a bonus herself.

As the court noted in its January 19, 2018 statement of reasons, continued enforcement of the "clear and unambiguous" additional alimony provision "would not result in an absurdity," and amending the DSA to entitle to defendant to a dollar-for-dollar offset of his "additional" alimony obligation would require the court to "rewrite an unambiguous agreement that was entered into freely by the parties." The court's factual findings and legal conclusions detailed in its

16

January 19, 2018 statements of reasons are fully supported by the record and complied with Rule 1:7-4.

VI.

Plaintiff similarly argues that the court failed to comply with Rule 1:7-4 when it established the retroactive date for its modified alimony obligation as the date plaintiff filed his motion, as opposed to April 2016, the date when plaintiff maintains defendant's circumstances changed. Again, we disagree.

The trial court has discretion "in setting the effective date of [a] retroactive alimony adjustment." Clarke v. Clarke, 349 N.J. Super. 55, 58 (App. Div. 2002). We will not overturn the court's decision in that regard "unless the court abused its discretion, failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence." Gordon, 380 N.J. Super. at 76.

Here, the court's written statement of reasons expressly incorporated by reference the court's comments during the March 23, 2018 hearing in which it noted that courts "frown on self-help," which is precisely what plaintiff resorted to when he stopped paying alimony after he unilaterally decided defendant no longer needed his support, contrary to the express requirements of the DSA. As the court further explained in its March 23, 2018 statement of reasons, plaintiff

17

"ceased paying alimony for over a year because he no longer wanted to pay, and for no other reason," and "plaintiff's complete disregard for his negotiated obligations is wholly without justification." Thus, the court's factual findings and legal conclusions establishing the retroactive date as the date of plaintiff's motion, rather than an earlier date, as detailed in its oral and written decisions, satisfy Rule 1:7-4, and are amply supported by the record.

## VII.

Finally, plaintiff maintains the court's modification of his alimony obligation from $100,000 to $73,500 per year is unsupported by substantial, credible evidence in the record. He also challenges the sufficiency of the court's factual and legal conclusions in support of the modified award, and argues that the court mistakenly resolved material factual disputes in defendant's favor without a plenary hearing. We agree.

"The basic purpose of alimony is the continuation of the standard of living enjoyed by the parties prior to their separation." Innes v. Innes, 117 N.J. 496, 503 (1990). "Where the parties have agreed on the amount of support or alimony," modification of the agreement is appropriate "to the extent that changed circumstances render the agreed terms no longer 'fair and equitable.'" Morris v. Morris, 263 N.J. Super. 237, 241 (App. Div. 1993) (quoting Lepis v.

18

Lepis, 83 N.J. 139, 148–149 (1980)). "[T]he moving party has the burden of establishing the circumstances that warrant the change" in alimony. Zazzo v. Zazzo, 245 N.J. Super. 124, 132 (App. Div. 1990).

"In an application brought by a supporting spouse for a downward modification in alimony . . . , the central issue is the supporting spouse's ability to pay." Miller v. Miller, 160 N.J. 408, 420 (1999). Thus, if the payor is incapable of complying with the terms of the JOD or supporting the payee at the marital standard of living, modification may be appropriate. Conversely, modification may also be appropriate when "there has been a significant change for the better in the circumstances of the dependent spouse . . . ." Stamberg v. Stamberg, 302 N.J. Super. 35, 42 (App. Div. 1997). In that situation, because the payee can better support himself or herself, the need for the payor to continue providing the original level of support diminishes. Additionally, the movant can demonstrate "changed circumstances under Lepis by citing a combination of changes on the part of both parties which together have altered the status quo which existed at the time of the entry of the support order under review." Ibid.

Although in uncontested divorces where the parties agree to a fixed amount of alimony, the judge issuing the JOD need not make specific findings as to the marital standard of living, Weishaus v. Weishaus, 180 N.J. 131, 144

19

(2004), it becomes incumbent upon the motion judge deciding a motion for modification to make those findings. Glass v. Glass, 366 N.J. Super. 357, 371 (App. Div. 2004) ("where the marital standard has not been established, a judge addressing a modification application must make such determination"); see Crews v. Crews, 164 N.J. 11, 16 (2000) ("The importance of establishing the standard of living experienced during the marriage cannot be overstated. It serves as the touchstone for the initial alimony award and for adjudicating later motions for modification of the alimony award when 'changed circumstances' are asserted."). Similarly, in N.J.S.A. 2A:34-23(k) and (l), the Legislature identified factors a court needs to consider when a party seeks to modify alimony. Those factors include, among other things, the financial circumstances of the parties; whether the change in circumstances is temporary or permanent; whether the change was voluntary; whether it was motivated by bad faith or a desire to avoid payment; and whether the change in circumstances renders the payor unable to meet the alimony obligation. See also Lepis, 83 N.J. at 151-52; Larbig v. Larbig, 384 N.J. Super. 17, 22-23 (App. Div. 2006); Glass v. Glass, 366 N.J. Super. 357, 370-71 (App. Div. 2004).

Initially, we note our agreement with the trial court that the increase in defendant's income, from the $110,000 imputed at the time of the DSA to her

undisputed base annual income of $190,000 at the time of plaintiff's motion, constituted a substantial change of circumstances warranting modification of plaintiff's limited term alimony obligation. See Lepis, 83 N.J. at 152-53; Stamberg, 302 N.J. Super. at 42. In modifying the amount, however, the court improperly resolved disputed, material questions of fact regarding the parties' marital standard of living without a plenary hearing, and failed to explain the factual basis for the $73,500 modified amount.

Specifically, in determining the parties' marital standard of living, the court relied on plaintiff's salary of $405,000 and defendant's imputed income of $110,000, as stated in the DSA. Further, it found "[t]hose figure[s] . . . consistent with the plaintiff's CIS which declared that the Schedule A, B and C expenses, used to establish the marital lifestyle of the parties, was approximately $32,000.00 per month." However, both plaintiff's and defendant's CISs stated the parties' joint gross income in 2012 was approximately $583,000 before taxes. And, although the court relied on plaintiff's CIS to establish the parties' marital expenses, plaintiff stated his CIS was "artificially inflated due to expenses being incurred during the divorce process" and defendant certified in her CIS that the marital lifestyle expenses totaled approximately $17,500. The court resolved

these material discrepancies by characterizing plaintiff's explanations regarding his CIS as "not persuasive."

As noted, establishing an accurate marital standard of living is material to determining the modified amount. Crews, 164 N.J. at 36 (remanding to the trial court because there was "no finding of the marital standard of living to guide [the Court's] review"). We conclude that, by relying on plaintiff's CIS and the DSA to establish the baseline marital standard of living, without conducting a plenary hearing, the court abused its discretion. See K.A.F. v. D.L.M., 437 N.J. Super. 123, 137-38 (App. Div. 2014); Palmieri v. Palmieri, 388 N.J. Super. 562, 564 (App. Div. 2006) (concluding that "[d]isputes of material fact should not be resolved on the basis of certifications nor in reliance upon ambiguous terms in a property settlement agreement," and that "[w]hen a genuine issue of material fact exists, a plenary hearing is required" (citation omitted)).[4]

Separately, we also agree with plaintiff that a remand is necessary for the court to provide factual findings consistent with Rule 1:7-4 detailing the bases

_____

[4] We acknowledge that the JOD indicated the parties "have been made aware" of the Crews decision, and that they agreed that "based on the terms of th[e] [DSA], they each have the ability to maintain the standard of living established during the marriage." The DSA, however, does not establish clearly that standard of living, particularly where part of plaintiff's limited duration alimony obligation included "additional" alimony by way of uncertain cash bonuses.

22

for modifying the limited term alimony from $100,000 to $73,500 per year. After considering the N.J.S.A. 2A:34-23(k) factors, the court modified the alimony obligation without any explanation how it arrived at the $73,500 figure. Instead, in its January 19, 2018 statement of reasons, the court stated in conclusory fashion that $73,500 "is the alimony needed to allow the defendant and the children to enjoy the marital lifestyle established during the marriage." While the court explained that "[a]ll of the schedules of the parties and their CIS's have been carefully examined," the parties' CISs differed by almost $175,000 with respect to annual marital expenses, and the court did not directly address that discrepancy or state how the disparate CISs affected its determination that a modified alimony award of $73,500 could maintain the marital standard. See Gordon, 380 N.J. Super. at 78 (remanding for additional findings when, among other cumulative errors, "relevant evidence was disregarded without discussion or explanation"). Finally, although we affirm the court's decision not to amend the "additional" alimony provision as plaintiff requested, see supra pp. 15-17, the fact that defendant is entitled to that "additional" alimony must be considered on remand when determining the amount of the modified award.

A-3937-17T3

To the extent we have not specifically addressed plaintiff's contentions, it is because we find they have insufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION