**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1446-16T3
          A-1552-16T3

IN THE MATTER OF THE ADOPTION
OF A CHILD BY M.E.B. and K.N.

_____

M.E.B. and K.N.,

    Plaintiffs-Appellants,

v.

S.D.G. and R.C.N.-B.,

    Defendants-Respondents.

_____

Argued May 30, 2018 — Decided July 16, 2018

Before Judges Koblitz, Manahan and Suter.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Morris County,
Docket Nos. FA-14-0051-15 and FD-14-0059-16.

Jason R. Melzer argued the cause for
appellants (Cole Schotz, PC, attorneys; Joseph
Barbiere and Jason R. Melzer, of counsel and
on the brief; Neoma M. Ayala on the brief).

Jeffrey S. Mandel argued the cause for
respondents (Law Offices of Jeffrey S. Mandel,
LLC, attorneys; Jeffrey S. Mandel, of counsel
and on the brief).

PER CURIAM

Plaintiffs, paternal grandparents M.E.B. and K.N., filed an adoption complaint seeking to adopt their granddaughter, E.G. E.G. is the daughter of defendant S.D.G. and plaintiffs' son, defendant R.C.N.-B. Plaintiffs received temporary custody of E.G., but produced no evidence of abandonment and defendants did not consent to the adoption. The complaint was ultimately dismissed for lack of subject matter jurisdiction. During the pendency of this action, plaintiffs filed a visitation complaint, which was also contested by defendants. The visitation action was eventually voluntarily dismissed by plaintiffs.

The trial court awarded attorney's fees to defendants as to both actions, which is the sole issue on appeal. Because the court did not abuse its discretion, we affirm.

I.

At the time the original adoption complaint was filed, plaintiffs resided in Woodstock, New York. S.D.G. resided with her parents in Mendham Township, New Jersey while R.C.N.-B. initially resided with plaintiffs in Woodstock. R.C.N.-B. and S.D.G. are not married to each other and were twenty-one and twenty years old, respectively, when E.G. was born.

S.D.G. has retained custody of E.G. and resided at her parents' residence with E.G. in Mendham since her birth. Both of S.D.G.'s parents provided financial support to both E.G. and S.D.G.

2

S.D.G.'s parents provided a nanny to assist in E.G.'s care. S.D.G. enrolled E.G. in a daycare in Mendham. According to S.D.G., R.C.N.-B. assisted in the care of E.G., who stayed at plaintiffs' residence in Woodstock approximately eight days per month since October 2014.

S.D.G. suffers from bipolar disorder and is required to take medication. S.D.G. admits that she stopped taking her medication in late 2014 and began abusing alcohol. On January 2, 2015, she admitted herself into the Carrier Clinic, a rehabilitation facility in New Jersey, where she remained for four days. She then admitted herself into a rehabilitation facility in Florida, where she stayed for one month. While S.D.G. received treatment, E.G. remained in the care of S.D.G.'s parents in Mendham.

According to S.D.G., the nanny became unavailable during this time and plaintiffs offered their assistance in caring for E.G. S.D.G. consented to E.G. spending time with R.C.N.-B. and plaintiffs in Woodstock. While in the rehabilitation facility, S.D.G. applied to a macrobiotic cooking school in Massachusetts and enrolled in the two-and-a-half month program after returning home from the facility. During this period, S.D.G. permitted E.G. to spend time in Woodstock with R.C.N.-B. and plaintiffs. According to plaintiffs, they began caring for E.G. on an "every

other week schedule."  S.D.G.'s parents also brought E.G. to Massachusetts to spend time with S.D.G. for a few weekends.

On February 20, 2015, plaintiffs filed the adoption complaint.  The complaint contained allegations that since the child's birth, plaintiffs had provided significant care and financial support for her and defendants had not "substantially provided care[] for the child independently."  It also alleged that defendant S.D.G. abandoned E.G. and was not reasonably likely to be able to care for her because of mental health and alcohol abuse issues.  The complaint additionally contained allegations that R.C.N.-B. had abandoned E.G.

On March 6, 2015, the trial court entered an order for a preliminary and final hearing, and granted plaintiffs temporary custody of E.G., pending the hearings.  E.G. was declared a ward of the court and the order permitted plaintiffs to take her to their home in New York.  According to R.C.N.-B., after he received the order on March 12, 2015, he was involved in a verbal altercation with his mother, K.N., which led K.N. to throw him out of the Woodstock residence.  R.C.N.-B. and S.D.G. attempted to retrieve E.G., but the New York State Police informed them that plaintiffs would have them arrested if they entered the property.

On March 18, 2015, defendants filed an ex parte order to show cause seeking to:  (1) vacate the March 6, 2015 order; (2) dismiss

4

the Verified Complaint with prejudice; and (3) regain custody of E.G.

On March 19, 2015, the trial court held an ex parte hearing on the order to show cause. S.D.G. and R.C.N.-B. both testified at the hearing; both stated that they did not abandon E.G. and did not consent to plaintiffs' attempt to adopt their child. The trial court considered both of them credible, and concluded plaintiffs did not have standing. The court dismissed the adoption complaint, vacated the order of temporary custody to plaintiffs and returned legal and physical custody of E.G. back to S.D.G. and R.C.N.-B.

Plaintiffs appealed and on January 29, 2016, we issued a published opinion, In Re Adoption of Child ex rel. M.E.B., 444 N.J. Super. 83, 94 (App. Div. 2016), reversing the trial court's order dismissing plaintiffs' complaint based on the ex parte nature of the proceedings and remanded to a different judge.

On remand, defendants filed a motion to dismiss the adoption complaint for lack of subject matter jurisdiction and standing. On August 3, 2016, the trial court dismissed plaintiffs' complaint for lack of subject matter jurisdiction and awarded defendants attorney's fees and costs solely for the adoption action. In its statement of reasons, the trial court explained that because plaintiffs were not New Jersey residents and did not receive the

child from an approved agency, the court lacked subject matter jurisdiction over the action. The court based this conclusion on New Jersey case law, stating that "the test for subject-matter jurisdiction under the [Adoption Act] for nonresident plaintiffs is that they must have received the child from an approved agency." N.J.S.A. 9:3-42.

In its statement of reasons, the trial court also addressed defendants' request for counsel fees and costs. The court awarded counsel fees and costs to defendants and focused on their few financial resources compared to plaintiffs. The court also noted that plaintiffs filed this action in a court without subject matter jurisdiction and therefore "forced [S.D.G.] to defend her constitutional rights in this forum unnecessarily." The court ordered defendants to provide an affidavit of services before awarding an exact dollar amount of fees.

On August 31, 2016, defendants filed a certification of services requesting fees of $115,133.59 relating solely to the adoption action. On November 2, 2016, the trial court issued an amended order and Statement of Reasons granting reasonable attorney's fees and costs of $67,079.19. The court referenced the August 3, 2016 order in which it found the following two issues most compelling: "the financial resources available to both parties, and the procedural outcome of the matter." The court

reasoned that defendants could not afford their own legal representation without depending on their parents and were forced to defend their constitutional right to remain parents to their child. The court also "found the case was unreasonably advanced" and believed plaintiffs acted in bad faith because they knew E.G. was not available for adoption. For these reasons, the court awarded attorney's fees to defendants for the reduced amount of $67,079.19.

## II.

On July 27, 2015, before their adoption complaint was dismissed, having not visited with E.G. for more than a year, plaintiffs filed a complaint seeking visitation. The complaint alleged that plaintiffs were the primary caretakers of their grandchild until defendants "abruptly denied [p]laintiffs any contact" with her. On September 29, 2015, defendants filed a counterclaim seeking dismissal of the visitation action and requesting an award of attorney's fees. On March 11, 2016, the trial court denied without prejudice defendants' motion to dismiss the visitation complaint and plaintiffs' cross-motion for preliminary visitation.

On August 31, 2016, plaintiffs filed a motion to voluntarily dismiss the visitation action with prejudice and without costs or fees to either party. Defendants filed a cross-motion to dismiss

the visitation action with prejudice and award reasonable attorney's fees, submitting a certification of services seeking $45,963.36 in attorney's fees.

The trial court awarded defendants $15,118.61 in attorney's fees related to the visitation action. The court stated:

> The reasons for granting counsel fees in connection with the [g]randparent [v]isitation [c]omplaint are substantially the same as those stated regarding the granting of attorney's fee[s] in the adoption matter. The [c]ourt also notes that a consent for dismissal would appear to have been a much more cost effective plan for ending this grandparent visitation matter rather than going through the trouble of a formal motion with briefs. [Defendants have] clearly demonstrated through this arduous proceeding that [they] would have acquiesced in dismissing this matter.

On January 4, 2017, the court submitted an amplification of reasons as to the visitation action pursuant to Rule 2:5-1(b). The court stated it was "extremely unlikely that [plaintiffs] would have been able to satisfy the burden of proving that visitation is necessary to avoid harm to the child."

Plaintiffs contend that the court erred in awarding fees for the visitation action because it "improperly imputed the [plaintiffs'] alleged bad faith in the adoption action to the visitation action." According to plaintiffs, there was no evidence

of bad faith in the filing of the visitation action as evidenced by their decision to voluntarily dismiss the action.

Defendants ask this court to focus solely on the award of attorney's fees in the visitation action and the amount of fees in both actions. Defendants contend that the trial court properly recited all the necessary factors that a court should consider in a fee application and correctly applied the factors to their situation. They argue that plaintiffs' argument that they relied on their counsel's judgment regarding the existence of subject matter jurisdiction does not negate the fact that they "pursued litigation in bad faith and based on false representations." Defendants point to the fact that plaintiffs obtained custody of E.G. ex parte through the court, and then pushed R.C.N.-B. out of their house when they served him with the order that granted them custody.

## III.

In reviewing the grant or denial of a counsel fee award, we accord significant deference to the trial judge's determinations. McGowan v. O'Rourke, 391 N.J. Super. 502, 508 (App. Div. 2007). A trial judge's "fee determinations . . . will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

Appellate courts must intervene when a trial judge's determination of fees is based on "irrelevant or inappropriate factors, or amounts to a clear error in judgment" and is "not premised upon consideration of all relevant factors."  Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005) (citing Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)).

Pursuant to Rule 5:3-5(c), courts are permitted to award attorney's fees in family actions.  See R. 4:42-9(a).  We accord deference to the family courts because of their "special jurisdiction and expertise in family matters."  Cesare v. Cesare, 154 N.J. 394, 413 (1998).

Rule 5:3-5(c) sets forth nine factors courts must consider in determining a fee allowance:

> (1) the financial circumstances of the parties;
>
> (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party;
>
> (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial;
>
> (4) the extent of the fees incurred by both parties;
>
> (5) any fees previously awarded;
>
> (6) the amount of fees previously paid to counsel by each party;

(7) the results obtained;

(8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and

(9) any other factor bearing on the fairness of an award.

[R. 5:3-5(c); see also Mani v. Mani, 183 N.J. 70, 94-95 (2005).]

Courts should consider "whether the party requesting the fees is in financial need; whether the party against whom the fees are sought has the ability to pay; the good or bad faith of either party . . .; the nature and extent of the services rendered; and the reasonableness of the fees." Mani, 183 N.J. at 94-95. Courts do not need to enumerate every factor in reaching their determination. Reese v. Weis, 430 N.J. Super. 552, 586 (App. Div. 2013). However, a counsel fee award that is not supported by adequate findings must be set aside. See Gordon v. Rozenwald, 380 N.J. Super. 55, 79 (App. Div. 2005).

"Fees in family actions are normally awarded to permit parties with unequal financial positions to litigate (in good faith) on an equal footing." J.E.V. v. K.V., 426 N.J. Super. 475, 493 (App. Div. 2012) (quoting Kelly v. Kelly, 262 N.J. Super. 303, 307 (Ch. Div. 1992)). "[B]ad faith for counsel fee purposes relates only to the conduct of the litigation . . . ." Mani, 183 N.J. at 95.

IV.

We affirm the grant of counsel fees in both actions substantially for the reasons set forth in Judge Louis S. Sceusi's initial and amplified reasons set forth on August 3 and November 2, 2016, and January 4, 2017. We add only the following. Plaintiffs make the point on appeal that they sought guidance about jurisdiction ex parte by letter from the County Surrogate prior to filing the adoption complaint. The ex parte nature of that request minimizes its utility, as the facts set forth in the complaint were disputed by the parents. Plaintiffs also contend that it was defendants who prolonged the dismissal of the visitation complaint by seeking counsel fees. The fact defendants sought counsel fees is not an appropriate defense to starting litigation that was unlikely to succeed.

Judge Sceusi was familiar with this litigation and had the expertise to determine whether plaintiffs litigated merely with the common ranker frequently evidenced in family matters, or with an unfair and unrealistic determination to "save" their granddaughter from her own parents. New Jersey has long accepted that termination of parental rights followed by adoption is not a method to provide children with a "better" home. In re Adoption of Child by J.E.V., 442 N.J. Super. 472, 485-86 (App. Div. 2015).

As Judge Sceusi stated, if plaintiffs were concerned about the safety of their granddaughter in the care of her parents, the proper avenue was to call the child protective services agency. The courts are infrequently helpful in resolving intergenerational conflict. And they are extremely costly. The counsel fees awarded, only a portion of what was incurred by the parties, was undoubtedly an unfortunate burden on plaintiffs, who reaped no benefit from this misguided litigation.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-1446-16T3