**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1868-24

NEAL CHAO WINTERHOF,

    Plaintiff-Appellant,

v.

MARGARET HAN-CHING
CHUNG,

    Defendant-Respondent.

_____

Submitted March 11, 2026 – Decided April 1, 2026

Before Judges Vanek and Jacobs.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Mercer County, Docket No. FM-11-0229-23.

Detommaso Law Group, LLC, attorneys for appellant (Gregory A. Pasler, on the briefs).

Szaferman, Lakind, Blumstein & Blader, PC, attorneys for respondent (Janine D. Fox, of counsel and on the brief).

PER CURIAM

Plaintiff Neal Chao Winterhof appeals from the portions of a November 22, 2024 Family Part post-judgment order enforcing an agreement with defendant Margaret Han-Ching Chung to extend their parenting coordinator's term and granting defendant counsel fees. Plaintiff also appeals a February 2, 2025 order denying his motion for reconsideration and awarding defendant counsel fees. For the reasons that follow, we affirm in part, vacate in part, and remand for proceedings consistent with this opinion.

I.

Plaintiff and defendant married in October 2009. They have three children. The parties divorced on December 5, 2022. The divorce judgment incorporated a September 12, 2025, Marital Settlement Agreement (MSA) and a December 1, 2025, addendum (MSA addendum). The MSA addendum provided, in part, the parties would retain a parenting coordinator for one year.

Defendant subsequently moved for a post-judgment order enforcing the MSA's custodial schedule. Plaintiff cross-moved for an order confirming the parties' agreement to utilize David Torchin as their parenting coordinator. On October 20, 2023, the court entered an order granting both motions, appointing Torchin as parenting coordinator for one year.

2

In July 2024, the parties began negotiating an agreement for the children to travel to California, where they would spend time with plaintiff and his family. On July 6, plaintiff and defendant continued a prior email exchange concerning a proposed parenting-time schedule for the trip.

In exchange for facilitating the children's trip to California, defendant asked plaintiff to agree that: (1) the two oldest children would return to The Wilberforce School for the 2025-26 school year; (2) the youngest child would attend SummerQuest summer camp in 2025 and then attend Wilberforce for the 2025-26 school year; (3) the parties would extend David Torchin's term as parenting coordinator for an additional year, ending in October 2025; and (4) the parties could modify these terms by mutual agreement.

The next day, plaintiff replied with a new proposed parenting schedule for the California trip "modified to coordinate with [his] family." Defendant replied, "I'd like you to explicitly agree to the conditions below before we continue any further." On July 9, plaintiff replied, "If the trip happens then yes." Plaintiff did not state his acceptance of defendant's terms was contingent on her agreement to a specific parenting schedule while the children were on the trip. Between July 23 and 25, the parties continued their email communications about the proposed parenting-time schedule for the trip.

3

On August 5, defendant emailed Torchin and notified him the parties would be extending his services for another year based on their agreement. The email copied plaintiff, who replied, "No[,] the agreement is not yet in effect."

About ten days later, plaintiff's counsel wrote to defendant's attorney confirming the "tentative agreement with the terms" under the following two conditions: (1) if defendant withdrew consent for the trip, plaintiff would withdraw his consent to defendant's terms; and (2) the extension of Torchin's term as parenting coordinator was "contingent on his continuing to facilitate agreements and act in the best interests of the children." Separate from the agreement, plaintiff's counsel also proposed the parties attend "co-parenting therapy . . . to reduce the number of parenting conflicts and hopefully reduce the frequency of Mr. Torchin's interventions."

Defendant's attorney replied, noting plaintiff's counsel merely restated the terms of the agreement the parties had reached. Defendant's attorney wrote, "[defendant] has no plans of rescinding [consent]" and the continued use of Torchin as parenting coordinator would merely extend the term under the October 2023 court order, which contained no conditions on Torchin's services.

On August 21, plaintiff sent the following email:

> I haven't heard anything. It is clear there is no
> agreement on schedule. You were not willing to stay

4

elsewhere from Santa Cruz and we could not agree on a schedule for this week. You have used my family as leverage again against me as is your typical strategy. I tried to initiate a solution in the kids['] best interest through my lawyer but was only met with verbal attack and character assassination. I will ask again—when are the kids free this week in [New Jersey]? Where are the kids located now? I need an answer asap so I can make plans.

By this time, defendant had already travelled to California with the children. Text messages between defendant and plaintiff's father referenced the August 21 email, with defendant writing, "[plaintiff] has continued to email me saying the California trip is not agreed on and he expects to see [the children] in [New Jersey] this week." To which plaintiff's father responded, "Please ignore the emails. I talked to [plaintiff] this [morning]." The children spent time with plaintiff and his family while they were in California from August 19 to August 27.

About one week after she returned from California with the children, defendant sent an email to Torchin and informed him the parties' agreement was in effect. Defendant copied plaintiff on the email. Plaintiff replied, "No it is not. We had no agreement prior to you leaving. . . . Feel free to take it up with the courts." The following day, defendant's attorney requested confirmation plaintiff would "comply with the terms of [the parties'] agreement." Defendant's

A-1868-24

attorney asserted the agreement was contingent on the children being brought to California for plaintiff's family trip, which she had done.

In reply, plaintiff's attorney asserted the "agreement between the parties was provisional and contingent" on conditions "clearly outlined" during the parties' negotiations and posited defendant had failed to "respond affirmatively or fulfill the necessary conditions to secure [plaintiff's] consent." Although plaintiff contested the extension of Torchin's term, he agreed to utilize an alternative parenting coordinator for an additional year.

Defendant's attorney then requested plaintiff sign a writing memorializing the parties' previously agreed-upon terms. The letter noted plaintiff's "behavior during this process ha[d] given [defendant and her attorney] little faith that anything other than a signed letter agreement w[ould] suffice as his confirmation, given his repeated attempts to deny, invalidate, and unilaterally modify their existing contract." Plaintiff's attorney again took the position that the parties had reached an agreement.

On October 1, 2024, defendant moved for a post-judgment order to enforce the parties' purported July 9, 2024 agreement and for an award of counsel fees. In a supporting certification, defendant stated the purpose of the July 9, agreement was to "ensure the children's attendance at the Pebble Beach

6

vacation" in exchange for plaintiff's consent to have the children enrolled at Wilberforce and SummerQuest and to extend Torchin's term as parenting coordinator.

On October 30, plaintiff opposed defendant's motion and cross-moved for counsel fees. Although he opposed formal enforcement of the agreement, plaintiff consented to have the two older children return to Wilberforce and to have the youngest child attend SummerQuest and Wilberforce—two of the four conditions to which he allegedly consented as consideration for the agreement.

After hearing argument, the judge entered a November 22, 2024 order with an accompanying written statement of reasons granting defendant's motion in part and denying plaintiff's cross-motion in its entirety. The judge found plaintiff had "requested that [d]efendant accompany their children on his family trip to California." The judge next found defendant made a counteroffer by requesting plaintiff's consent to three terms and that plaintiff had accepted the counteroffer in his July 9 email, which established defendant's facilitation of the trip as a condition precedent to plaintiff's performance. "If the trip did not occur or [d]efendant did not accompany the children," the judge reasoned, "then no contract would exist."

7

Because defendant had facilitated the California trip, the judge concluded a contract was formed predicated on the condition precedent to plaintiff's performance having been satisfied. The judge found the parties agreed to the consensual extension of Torchin's term as parenting coordinator. The judge rejected plaintiff's argument that a particular parenting schedule during the trip was an essential term of the contract because "it was not something [plaintiff] bargained for at the time of the contract's formation"—and even if it were an essential term, defendant had adhered to plaintiff's desired schedule by dropping the children off with plaintiff and his father on August 21.

The judge also awarded defendant counsel fees and denied plaintiff's cross-motion. The judge found defendant had "advance[d] reasonable arguments in good faith," obtained "favorable results" through her cross-motion, and had been awarded fees for an earlier motion to enforce an agreement between the parties. Conversely, plaintiff "obtain[ed] unfavorable results based on his efforts to avoid performing his obligations."

Plaintiff moved for reconsideration of the portions of the November 22 order enforcing the parties' agreement to extend Torchin's term and awarding defendant counsel fees. Defendant opposed plaintiff's motion and cross-moved for counsel fees.

A-1868-24

On January 31, 2025, the judge entered an order with an accompanying written decision denying plaintiff's reconsideration motion in its entirety and granting defendant's cross-motion for counsel fees. The judge reaffirmed the finding that the July 2024 email exchange between the parties constituted an enforceable conditional contract, denied plaintiff's request for a plenary hearing, and found the award of counsel fees in the November 22 order appropriate. The judge granted defendant's cross-motion for counsel fees on plaintiff's reconsideration motion, again concluding defendant had taken reasonable positions that yielded favorable results.

On appeal, plaintiff challenges the judge's finding the parties' email exchange constituted a binding and enforceable contract and argues there was no meeting of the minds on essential terms, no unequivocal acceptance, and no consideration or mutuality of obligation because defendant circumvented the obligations plaintiff bargained for by negotiating parenting time with his family instead of him. Plaintiff also alleges the court abused its discretion by denying his request for a plenary hearing on material factual disputes surrounding the contract formation. Plaintiff argues defendant did not fully prevail on her motion, yet was awarded counsel fees as though she had, and the judge neither

9

made a finding of bad faith nor considered the parties' financial circumstances as required by Rule 5:3-5(c).

Defendant maintains the parties' emails support the judge's conclusion that plaintiff's statement "if the trip happens then yes" was a valid acceptance of definite essential terms and imposed a condition on plaintiff's performance which was satisfied when defendant took the children to California for plaintiff's family trip. Defendant argues the judge's award of counsel fees was not an abuse of discretion because the judge considered the parties' financial circumstances, having awarded counsel fees in prior post-judgment proceedings, and a finding of bad faith was not necessary because the award was predicated on the other factors contained in Rule 5:3-5(c).

II.

We review the issues before us under firmly established standards. Because "matrimonial courts possess special expertise in the field of domestic relations," Cesare v. Cesare, 154 N.J. 394, 411 (1998), we will not disturb the court's factual findings unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (quoting Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div.

10

2015)).  "[W]e accord great deference to discretionary decisions of Family Part judges."  Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012).

However, we review a Family Part judge's legal decisions de novo.  Ibid. Our "review of a contract, generally, is de novo, and therefore we owe no special deference to the trial court's . . . interpretation."  Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014) (citing Kieffer v. Best Buy, 205 N.J. 213, 222-23 (2011)).  This includes questions about the formation and enforceability of a contract.  Atalese, 219 N.J. at 442-43.

We review a judge's decision on a reconsideration motion for abuse of discretion.  Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021).  The same standard governs our review of a judge's denial of a request for a plenary hearing.  Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015).  "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'"  Pitney Bowes Bank, Inc. v. ACB Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

Similarly, determinations regarding counsel fees will be disturbed "only on the rarest of occasions, and then only because of a clear abuse of discretion."

Garmeaux v. DNV Concepts, Inc., 448 N.J. Super. 148, 155 (App. Div. 2016) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)). Where a judge correctly applies the case law, statutes, and court rules governing counsel fees, the fee award is entitled to our deference. See Yueh v. Yueh, 329 N.J. Super. 447, 466 (App. Div. 2000).

## III.

### A.

Based on our review of prevailing law as applied to the record, we are unconvinced the judge erred in finding the parties had reached an agreement to extend Torchin's term as parenting coordinator through their email communications.

"If parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract," but "[w]here the parties do not agree to one or more essential terms, however, courts generally hold that the agreement is unenforceable." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992). The "parties' objective intent governs. A contracting party is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that

outwardly manifested." Hagrish v. Olson, 254 N.J. Super. 133, 138 (App. Div. 1992).

After de novo review, we conclude the record supports the judge's conclusion that the parties formed an enforceable contract through their July 2024 email exchanges. Defendant's emails set forth definite terms—in exchange for her agreement to bring the children to California for plaintiff's family trip, plaintiff was required to (1) consent to the two oldest children returning to Wilberforce for the 2025-26 school year; (2) consent to the youngest child attending SummerQuest in 2025 and then Wilberforce for 2025–26; (3) agree to extend Torchin's term as parenting coordinator for an additional year; and (4) acknowledge the terms were modifiable by mutual agreement. Defendant requested plaintiff "explicitly agree to the conditions below" before proceeding to further communicate regarding the trip.

Plaintiff's July 9 response—"If the trip happens then yes"—objectively manifests his assent to those enumerated terms, conditioned solely upon the occurrence of the trip. As the judge recognized, plaintiff's response did not negate acceptance; instead, it established a condition precedent to plaintiff's performance. The phrasing is consistent with a bilateral contract in which each party's obligation is conditioned upon the other's performance. Objectively

A-1868-24

read, plaintiff agreed to defendant's stated conditions provided the trip occurred. When defendant took the children to California from August 19 to August 27, the condition precedent was satisfied.

Plaintiff's argument that "if the trip happens" had a broader meaning—namely, it required agreement to a specific parenting schedule during the trip is unavailing. Nothing in plaintiff's July 9 email references a particular parenting schedule, nor does it condition assent upon agreement to any specific parenting-time schedule during the trip. Defendant had asked for explicit agreement to her four terms; plaintiff replied in the affirmative, conditioned only on the trip occurring. Thus, plaintiff's July 9 email objectively represents his assent to the enumerated terms, subject to the sole condition of the trip occurring, which does not bear on the contract's formation—and was satisfied in any event. Because the emails establish the terms of the parties' agreement, there were no disputed facts and no plenary hearing was necessary.

The parties' subsequent negotiations to establish a specific parenting-time schedule for the trip do not serve to retroactively void the contract. We discern no error in the judge's conclusion a precise parenting-time schedule was not an essential term of the agreement. The consideration defendant sought included plaintiff's consent to school placements and the extension of Torchin's term and

14

the reciprocal consideration plaintiff required was defendant's facilitation of the California trip. The emails reflect the central bargain concerned those issues. Based on the emails alone, parenting-time logistics during the trip were not essential term of the agreement.

In sum, because the essential terms were definite, the acceptance was objectively manifested, consideration was present on both sides, and the sole condition precedent was satisfied, the judge did not err in granting defendant's enforcement motion and denying plaintiff's motion for reconsideration of that portion of the November 22, 2024 order.

B.

We turn to our review of the judge's award of counsel fees to defendant. "In the field of civil litigation, New Jersey courts historically follow the 'American Rule,' which provides litigants must bear the cost of their own attorneys' fees." Innes v. Marzano-Lesnevich, 224 N.J. 584, 592 (2016). "However, 'a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract.'" Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 385 (2009) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 440 (2001)).

A-1868-24

Rule 5:3-5(c) authorizes fee awards in family matters to "any party successful in the action, on any claim for . . . enforcement of agreements between spouses." The decision to grant counsel fees must be supported by "adequate findings on issues critical to application of the law," Gordon v. Rozenwald, 380 N.J. Super. 55, 79 (App. Div. 2005), and the judge must consider:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.
>
> [Ibid. (quoting R. 5:3-5(c)).]

Prior to entering the November 22, 2024 and February 2, 2025 orders granting defendant counsel fees, the judge addressed the reasonableness and good faith of the parties' positions (factor three), the extent of fees defendant incurred (factor four), the history of post-judgment litigation between the parties including prior fee awards (factor five), and defendant's success on the motions (factors seven and eight). The judge did not make specific findings regarding

16

the parties' financial circumstances (factor one), the parties' ability to pay (factor two), or the amount of fees each party previously paid to counsel (factor six).

Prevailing law dictates the judge must "address the pertinent factors under Rule 5:3-5(c)," and failure to do so warrants remand for further findings. Clarke, 359 N.J. Super at 572; see also Yueh, 329 N.J. Super. at 470 (remanding "for a searching consideration of the [plaintiff's] fee request"). Thus, given the lack of explicit findings on factors one, two, and six of Rule 5:3-5(c), we vacate the award of counsel fees to defendant in both orders and remand for the judge to set forth findings of fact and conclusions of law underpinning the counsel fee awards. See R. 1:7-4 (findings of fact and conclusions of law are required to be set forth orally or in writing).

To the extent we have not addressed any of the parties' remaining arguments, we are satisfied they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed in part, vacated in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-1868-24